J-S02025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JAMES EDWARD ARMSTRONG | : | |
| Appellant | : | No. 1337 EDA 2017 |

Appeal from the PCRA Order March 22, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0005475-2011

BEFORE:    BOWES, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 31, 2018**

Appellant James Edward Armstrong appeals from the order dismissing his timely first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Appellant claims that the PCRA court erred by (1) concluding that the issues raised in his second amended petition, which was filed without leave of court, were waived; and (2) denying his ineffective assistance of counsel claims without a hearing.  We affirm.

We previously set forth the facts of this case as follows:

> On May 22, 2007, at approximately 11:53 p.m., police responded to a report of a shooting at Patterson and Barclay Streets in Chester, Pennsylvania.  Upon arriving, the officers discovered an individual, later identified as Eric Caldwell ("the victim"), who was found lying on the ground with gunshot wounds to his back.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Witnesses placed [Appellant] and his co-defendant, Rashad Ishmail ("Ishmail") at times inside and outside an establishment known as the "5 Street Bar" on the date of the murder. Further testimony indicated that the two defendants were initially inside the bar, and then stepped outside the bar at the same time the victim drove his vehicle in front of the bar. Craig Gibson ("Gibson") indicated that after seeing both defendants inside the bar, he stepped outside the bar and then saw the victim pull up in a car.[1] According to Gibson, the victim greeted him but their conversation was interrupted when Ishmail, who had exited the bar with Appellant, began to argue with the victim, asking him "[w]here the money at?" N.T. (Preliminary Hearing), 9/23/11, at 22. Although Gibson stated that he could not hear the victim's reply, Gibson next observed Ishmail punch the victim in the face.

Gibson stated that after Ishmail punched the victim, the victim ran around the corner and Ishmail and Appellant pursued him. Gibson stated that he next saw Appellant pull out a gun and beg[i]n shooting in the victim's direction. Fearing he would be shot, Gibson turned around and headed back to the bar. According to Gibson, he later returned and found the victim on the ground gasping for air.

Commonwealth witness Jimmy Crawford ("Crawford") testified that on the night in question, he had been standing outside when he saw the victim walking up the street. As the victim quickened his pace, Crawford saw somebody else run around the corner and start shooting at the victim. According to Crawford, the victim fell to the ground and the gunman walked over to the victim, shot him three or four more times, and then walked around the corner.

Investigating the crime scene, William Costello, of the Delaware County Criminal Investigation Division, located eight spent shell casings and two projectiles. Mr. Costello testified that some of the shell casings were found seven to ten feet from the victim's body. The parties also stipulated that in addition to the shell casings and projectiles, the police recovered a nine-millimeter handgun and a .357 handgun from a car on the 200 block of Pusey

_____

[1] Gibson testified at the preliminary hearing, but was killed prior to trial. An audio recording of Gibson's preliminary hearing testimony was played for the jury at trial and copies of the testimony were distributed to the jurors so they could follow along. During deliberations, the jury requested and was given a copy of the transcript that they reviewed during trial.

Street. The jury subsequently heard testimony from ballistic experts that the projectile and eight shell casings were all fired from the nine-millimeter handgun.

Another Commonwealth witness, Darrell Roberts ("Roberts"), provided a written statement to the police that indicated he heard fifteen gunshots on the night of the incident. He also previously identified Ishmail and Appellant from photographic arrays. Notwithstanding this written statement, at trial, Mr. Roberts declared that he knew nothing about the incident. He also testified that [he] did not know either of the two defendants, though he had previously included the nicknames of each defendant in his written statement.

The jury also heard the testimony from Steven Cooper ("Cooper"), who at one time shared a jail cell with Appellant. Mr. Cooper testified that Appellant admitted that he killed the victim because the victim "owe his man some money." N.T., 3/6/12, at 96. Another Commonwealth witness, Michael Lane ("Lane"), who identified himself as Appellant's first cousin, also testified that Appellant told him he killed the victim because "he owe his man money." N.T., 3/7/12, at 9; *see* Trial Court Opinion, 10/25/12, at 1-5.

After their arrest, Appellant and Ishmail were tried before a jury in March 2012. Appellant was found guilty of first-degree murder and the firearms violation. Ishmail was acquitted on all charges. On May 17, 2012, the trial court sentenced Appellant to life imprisonment for the murder conviction and a consecutive three and one-half to seven years for the firearms violation.

*Commonwealth v. Armstrong*, No. 2427 EDA 2012 at 1-2 (Pa. Super. filed July 25, 2013) (unpublished mem.).

Following his conviction, Appellant filed a direct appeal. This Court affirmed Appellant's judgment of sentence on July 23, 2013. *Id.* On March 5, 2014, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Armstrong*, 87 A.3d 317 (Pa. 2014) (table).

On August 4, 2014, Appellant filed a timely *pro se* PCRA petition. Henry DiBenedetto-Forrest, Esq. (Attorney DiBenedetto-Forrest) was appointed to represent Appellant and filed an amended petition on Appellant's behalf on September 9, 2015.[2] On February 10, 2016, the PCRA court filed a Pa.R.Crim.P. 907 notice of intent to dismiss the first amended petition without a hearing.

The PCRA court subsequently granted several extensions for Appellant to file a 907 response.[3] On March 28, 2016, Appellant moved to waive his right to counsel. After holding a ***Grazier***[4] hearing on June 16, 2016, the PCRA court accepted Appellant's waiver of counsel and removed Attorney DiBenedetto-Forrest from the case. Thereafter, the PCRA court granted another extension for Appellant to file a 907 response by September 1, 2016.

On July 21, 2016, Michael J. Malloy, Esq. (Attorney Malloy) entered his appearance.[5] At that time, Attorney Malloy sent a letter to the PCRA court

---

[2] In the first amended petition, Appellant alleged that trial counsel was ineffective for failing to object to the jury's review of Craig Gibson's preliminary hearing transcript. First Amended Petition, 9/9/15, at 3 (unpaginated). Additionally, Appellant asserted that trial counsel was ineffective for failing to object to the trial court's instruction that the jury should consider and weigh Gibson's preliminary hearing testimony as if the testimony had been presented by a live witness. ***Id.*** at 4.

[3] Appellant filed these requests for extensions *pro se*.

[4] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1988).

[5] Attorney Malloy appears to have been privately retained by Appellant. We note that Attorney Malloy represented Appellant at the preliminary hearing in

requesting an additional thirty days "to file an amended PCRA petition, if necessary." Letter, 7/26/16.

On August 3, 2016, a back-up judge[6] issued an order granting a thirty-day extension. Order, 8/3/16. However, on August 16, 2016, the PCRA court issued an amended order stating that "counsel shall file a response to the Notice of Intent to Dismiss filed on February 10, 2016 no later than August 30, 2016." Order, 8/16/16.

On August 31, 2016, Attorney Malloy filed a second amended petition which raised new claims,[7] but did not respond to the PCRA court's 907 notice

_____

the instant case, but did not represent him at trial. As discussed below, Attorney Malloy raised several issues, some of which pertain to a preliminary hearing witness and trial counsel's various failures with respect to investigating the witness's criminal history.

[6] The record indicates that the original extension was granted by a back-up judge (the Honorable John P. Capuzzi), rather than the Honorable James P. Bradley, who had otherwise presided over the trial and PCRA proceedings in this matter.

[7] In his second amended petition, Appellant raised three new claims of ineffective assistance of counsel. First, Appellant alleged that trial counsel was ineffective for failing to investigate Gibson's full criminal history and discovering a purported cooperation agreement between Gibson and the Commonwealth. According to Appellant, had counsel discovered the alleged cooperation agreement the Commonwealth would have been precluded from admitting Gibson's preliminary hearing testimony at trial. Second Amended Petition, 8/31/16, at 2-3. Second, Appellant asserted that trial counsel was ineffective for failing to present an enhanced video from the 5 Street Bar, which, Appellant alleged, would contradict testimony that Appellant was inside the bar. *Id.* Third, Appellant claimed that trial counsel was ineffective for failing to investigate or locate witnesses from the bar to contradict the testimony that Appellant was inside the bar. *Id.*

of intent to dismiss the first amended petition. On October 26, 2016, Attorney Malloy filed a third amended petition.[8]

On January 18, 2017, the Commonwealth filed an objection to Appellant's new pleadings. The Commonwealth stated that because Appellant did not seek leave of court prior to filing his second and third amended petitions, those petitions were untimely filed and the claims raised therein were waived.

On January 25, 2017, Appellant filed a motion to accept the third amended petition *nunc pro tunc*, but did not refer to the second amended petition objected to by the Commonwealth. The PCRA court granted Appellant's motion.

On February 14, 2017, the PCRA court issued a "notice of intent to dismiss petitioner's second and third amended PCRA petitions without a hearing." Order, 2/14/17. The PCRA court, in relevant part, concluded that Appellant's second amended petition was filed without leave of court and the claims therein were therefore waived. ***See id.*** (stating "[Appellant] has been granted leave, *nunc pro tunc*, to file the third amended petition and therefore

_____

[8] Appellant's third amended petition alleged, *inter alia*, that PCRA counsel recently located a new witness, Brian Tucker, who would have testified that Appellant was not present at the scene of the homicide. Third Amended Petition, 10/26/16, at 2. Appellant, in his third amended petition, Appellant averred that he filed his second amended petition pursuant to a prior court order and incorporated portions of the seconded amended petition by reference. ***Id.*** at 1-2. Appellant also attached a copy of his second amended PCRA petition to his third amended petition.

this claim may be considered by the court. However, the additional claims raised for the first time in the 'Amended Petition for Post-Conviction Collateral Relief' filed on August 31, 2016 [*i.e.*, the second amended petition] have been waived.")  Nevertheless, the court found all claims raised by Appellant were meritless.

Appellant filed a response on March 6, 2017, alleging, *inter alia*, that he timely filed his second amended petition at the discretion of the PCRA court. According to Appellant, the PCRA court orally granted an extension for counsel to file the second amended petition.  Appellant did not address the PCRA court's August 16, 2016 order directing that an extension of time was granted for the purposes of filing a response to the court's initial February 10, 2016 Rule 907 notice of its intent to dismiss Appellant's first amended petition.  On March 22, 2017, the PCRA court dismissed Appellant's PCRA petitions.

On March 30, 2017, Attorney Malloy filed a motion to withdraw.  After Attorney Malloy filed a timely notice of appeal on Appellant's behalf on April 18, 2017, the PCRA court granted his motion to withdraw.

On April 28, 2017, the PCRA court appointed present counsel, Stephen Dean Molineux, Esq., to represent Appellant.  Present counsel filed a Rule 1925(b) statement asserting the following errors complained of on appeal, which we have reordered for discussion:

> 1. Whether the PCRA [c]ourt erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the [c]ourt erroneously did not consider that Brian Tucker was available at the time of trial and would have testified that [Appellant] was not present at the scene of the homicide on May 22, 2007[.]

2. Whether the PCRA [c]ourt erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the [c]ourt erroneously determined that [Appellant] was not prejudiced by trial counsel's ineffectiveness when trial counsel failed to object when the trial court allowed the jury to review the transcript of Craig Gibson's testimony[.]

3. Whether the PCRA [c]ourt erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the [c]ourt erroneously determined that [Appellant's] claim that trial counsel was ineffective for failing to object to the admission of Craig Gibson's preliminary hearing testimony where trial counsel did not properly investigate Craig Gibson's criminal history prior to his testimony at the preliminary hearing[.]

4. Whether the PCRA [c]ourt erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the [c]ourt erroneously determined that all claims raised in [Appellant's second[9]] amended petition were waived[.]

Pa.R.A.P. 1925(b) Statement, 5/24/17, at 1.

The PCRA court filed a responsive opinion. The court concluded that Appellant's first two issues regarding Brian Tucker and the jury's review of the transcript of Gibson's preliminary hearing testimony did not warrant relief. PCRA Ct. Op. at 14-17.

With respect to Appellant's issue that trial counsel failed to investigate Gibson's criminal history **before** the preliminary hearing, the court concluded that claim was not preserved in any of Appellant's amended petitions. ***Id.*** at 18; ***see*** *supra* note 7 (indicating that Appellant raised a claim that trial counsel

_____

[9] Appellant asserted that the PCRA court erred in dismissing Appellant's "third amended petition." Pa.R.A.P. 1925(b) Statement at 1. However, it is apparent that the court permitted Appellant to proceed with the claim listed in the third amended petition, but suggested that Appellant's second amended petition was filed without leave of the court and that the claims therein were waived.

failed to object to the admission of Gibson's preliminary hearing testimony based on an allegedly undisclosed cooperation agreement). The court thus suggested that Appellant's issue, as set forth in his Rule 1925(b) statement, was waived for being raised for the first time on appeal. PCRA Ct. Op. at 18. In any event, the PCRA court found the issue meritless. ***Id.*** at 21-23.

Lastly, we agree with the PCRA court that it properly refused to consider the claims raised in Appellant's second amended petition. ***See id.*** at 26. The court, however, noted that it nonetheless found the Appellant's claim regarding the admission of Gibson's preliminary hearing testimony, which was raised in the second amended petition to be meritless. ***Id.***

Appellant raises the following issues for our review, which we have reordered for the purposes of discussion:

1. Whether the PCRA court erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the court erroneously determined that all claims raised in amended petitions without leave of court were waived.

2. Whether the PCRA court erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the court erroneously determined that [Appellant's] claim that trial counsel was ineffective for failing to object to the admission of Craig Gibson's preliminary hearing testimony where trial counsel did not properly investigate Craig Gibson's criminal history.

3. Whether the PCRA court erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the court erroneously did not consider that Brian Tucker was available at the time of trial and would have testified that [Appellant] was not present at the scene of the homicide on May 22, 2007.

4. Whether the PCRA court erred in dismissing [Appellant's] PCRA, without an evidentiary hearing, where the court

erroneously determined that [Appellant] was not prejudiced by trial counsel's ineffectiveness when trial counsel failed to object when the trial court allowed the jury to review the transcript of Craig Gibson's testimony.

Appellant's Brief at 4 (some formatting altered).

In his first issue, Appellant contends that the PCRA court incorrectly concluded that the issues raised in his second amended petition were waived. Appellant asserts that the PCRA court "orally granted Appellant an extension of time to file an amended petition" and that he timely filed his second amended petition "at the discretion of the court." *Id.* at 14. As a result, he claims, the PCRA court erred in finding waiver of the claims he raised in his second amended petition.

Pursuant to Pennsylvania Rule of Criminal Procedure 905, a PCRA court has discretion to grant leave to amend or withdraw a petition at any time. *See* Pa.R.Crim.P. 905(A). Additionally, an "[a]mendment shall be freely allowed to achieve substantial justice." *Id.*

However, our Supreme Court has explained that

it is clear from the rule's text that leave to amend must be sought and obtained, and hence, amendments are not "self-authorizing." *Commonwealth v. Porter*, 35 A.3d 4, 12 (2012). Thus, for example, a petitioner may not "simply 'amend' a pending petition with a supplemental pleading." *Id.* Rather, Rule 905 "explicitly states that amendment is permitted only by direction or leave of the PCRA Court." *Id.* at 523–24, 35 A.3d at 12; *see also Williams*, 828 A.2d at 988 (indicating that the PCRA court retains discretion whether or not to grant a motion to amend a post-conviction petition). It follows that petitioners may not automatically "amend" their PCRA petitions via responsive pleadings.

***Commonwealth v. Baumhammers***, 92 A.3d 708, 730 (Pa. 2014) (some citations altered). We review the PCRA court's decision to deny leave to amend for an abuse of discretion. ***See Commonwealth v. Keaton***, 45 A.3d 1050, 1060 n.3 (Pa. 2012).

Even if we were to agree with Appellant that the PCRA court erred in deeming the claims raised in Appellant's second amended petition waived, no relief is due. The court, as noted above, fully addressed all issues raised in all three amended PCRA petitions. Thus, there is no need to remand the matter for further consideration of the claims raised in Appellant's second amended petition.

In his second issue, Appellant asserts that the PCRA court erred in denying relief on the issue raised in his second amended petition, namely that trial counsel was ineffective for failing to object to the admission of Craig Gibson's preliminary hearing testimony based on the alleged cooperation agreement. For the reasons that follow, we conclude that Appellant's second issue has been waived for appellate review.

It is well-settled that "[a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived." ***Commonwealth v. Hill***, 16 A.3d 484, 491(Pa. Super. 2011) (emphasis and citation omitted). Further, an appellant's Rule 1925(b) Statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii).

Here, the ineffectiveness claim raised in Appellant's Rule 1925(b) statement was based on counsel's failure to investigate Craig Gibson's criminal history prior to the preliminary hearing.  **See** Appellant's 1925(b) Statement, 5/24/17.  However, as the PCRA court correctly noted, this claim is distinct from the claim Appellant raised in his second amended petition.[10]

Appellant presently attempts to resurrect the original claim that trial counsel was ineffective for failing to discover the alleged cooperation agreement and object to admission of Gibson's preliminary hearing testimony. Unfortunately, Appellant's effort is unavailing, as we must find the issue waived on account of his failure to preserve it in his Rule 1925(b) statement.[11]

_____

[10] The PCRA noted that "[t]hree amended petitions were filed in this matter and nowhere was it alleged that trial counsel was ineffective for failure to conduct an investigation before the preliminary hearing."  PCRA Ct. Op., 6/13/17, at 18.

[11] Nevertheless, we find this claim meritless on the basis of the PCRA court's opinion, which stated:

> The claim before the PCRA court, distilled to its essence[,] was that an agreement to testify on behalf of the Commonwealth existed, that it was not revealed to trial counsel, that [counsel] ineffectively failed to discover it and therefore, [counsel] did not "properly" object to the Commonwealth's motion to admit former testimony.  The factual basis for this claim is non-existent and the record belies the claim that [Appellant] was denied the opportunity to cross-examine Gibson. Because this claim is based on mere conjecture, the [c]ourt concluded that it had no arguable merit and resulting prejudice did not exist.

PCRA Ct. Op., 6/13/17, at 18-19.

*See Hill*, 16 A.3d at 494 (stating that this Court "lack[s] the authority to countenance deviations from [Rule 1925(b)'s] terms [and] the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement").

Appellant's two remaining issues involve claims of ineffective assistance of counsel, both of which were preserved in Appellant's first and third amended petitions, as well as his Rule 1925(b) statement.

Where, as here, the PCRA court has dismissed a petition without an evidentiary hearing, we review the PCRA court's decision for an abuse of discretion. *See Commonwealth v. Roney*, 79 A.3d 595, 603 (Pa. 2013). Pursuant to Rule 907, a PCRA court has discretion to dismiss a PCRA petition without a hearing if the court is satisfied that there are no genuine issues concerning any material fact, that the defendant is not entitled to post-conviction collateral relief, and that no legitimate purpose would be served by further proceedings. *See* Pa.R.Crim.P. 907(1); *Roney*, 79 A.3d at 604.

Our review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record."

---

Additionally, the PCRA court concluded that even if trial counsel were aware of Gibson's criminal background and the extent of his cooperation with the Commonwealth, the argument that it would have changed the outcome of the trial is "at best[,] specious." *Id.* at 21.

*Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citation omitted).

Moreover, it is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. *Commonwealth v. Williams*, 732 A.2d 1167, 1177 (Pa. 1999). Our Supreme Court has adapted the *Strickland*[12] performance and prejudice test into a three-part inquiry. *See Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987). Thus, to succeed on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs. *Id.*

"To demonstrate prejudice, the petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. King*, 57 A.3d 607, 613 (Pa. 2012) (citation omitted). "When it is clear that appellant has failed to meet the prejudice prong [of his ineffective assistance of counsel claim], the claim may be disposed on that basis alone, without a determination

---

[12] *Strickland v. Washington*, 466 U.S. 668 (1984).

- 14 -

of whether the first two prongs have been met." ***Commonwealth v. Fink***, 791 A.2d 1235, 1246 (Pa. Super. 2002) (citation omitted).

Appellant argues that trial counsel was ineffective for failing to call Brian Tucker as a witness at trial. Appellant's Brief at 19. Appellant asserts that Tucker's testimony would have shown that Appellant was not at the scene of the homicide and that, further, Appellant's co-defendant Ishmail was the one who shot the victim. *Id.* As a result, Appellant contends that the PCRA court should have held an evidentiary hearing to assess the credibility of Tucker's testimony. *Id.*

The Commonwealth counters that Tucker's proffered witness statement pertains only to the conduct of Appellant's co-defendant and makes no reference whatsoever to Appellant. Commonwealth's Brief at 18. Additionally, it argues that the statement fails to allege why counsel knew of, or should have known of Tucker's existence. *Id.* Finally, the Commonwealth concludes that there was no issue of material fact warranting a hearing; Tucker's statement was an exhibit to the petition, and because Appellant did not demonstrate that his claim had arguable merit, it was not necessary for the court to determine Tucker's credibility, or trial counsel's basis for her omission. *Id.* at 19.

It is well settled that

> [w]hen raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the ***Strickland*** test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known

- 15 -

of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. ***Commonwealth v. Johnson***, 966 A.2d 523, 536 ([Pa.] 2009); ***Commonwealth v. Clark***, 961 A.2d 80, 90 ([Pa.] 2008). To demonstrate ***Strickland*** prejudice, a petitioner "must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." ***Commonwealth v. Gibson***, 951 A.2d 1110, 1134 ([Pa.] 2008). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness' testimony would have been helpful to the defense. ***Commonwealth v. Auker***, 681 A.2d 1305, 1319 (Pa. 1996). "A failure to call a witness is not *per se* ineffective assistance of counsel for such decision usually involves matters of trial strategy." ***Id.***

***Commonwealth v. Sneed***, 45 A.3d 1096, 1108-09 (Pa. 2012).

Instantly, the PCRA court, in relevant part, concluded that Tucker's testimony "may have further inculpated co-defendant Ishmail[,] but it ma[d]e no reference to [Appellant's] whereabouts or involvement in, or his lack of involvement in the murder." PCRA Ct. Op., 6/13/17, at 25. Therefore, the PCRA court concluded that Appellant failed to demonstrate prejudice. We agree with the PCRA court's analysis.

Tucker's handwritten statement, dated August 27, 2016, was attached to Appellant's third amended PCRA petition. Assuming Tucker's testimony is credible, it establishes only that Appellant's co-defendant was present at the scene of the murder, that shots were fired, and that the co-defendant had a firearm. The statement does not mention Appellant, let alone preclude the possibility that Appellant was present at the scene. Additionally, the statement did not allege that the witness was available and willing to testify

at trial, nor did Appellant assert that counsel knew of, or should have known of Tucker's existence. Because Appellant has failed to demonstrate prejudice, his claim is without merit. **See Pierce**, 527 A.2d 973. Accordingly, no relief is due.

In his next issue, Appellant contends that trial counsel was ineffective for failing to object when the trial court allowed the jury to review a transcript of Gibson's preliminary hearing testimony during deliberations.

The determination of whether a trial exhibit should be permitted to go out with the jury during deliberations "is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion." **Commonwealth v. Parker**, 104 A.3d 17, 25 (Pa. Super. 2014) (citation omitted). "Our courts have rarely found that materials given to juries during deliberations constitute reversible error." **Commonwealth v. Barnett**, 50 A.3d 176, 194 (Pa. Super. 2012).

Appellant's claim arose from the following circumstances. Approximately one and a half hours into deliberations, the jury requested three items: Darryl Roberts' witness statement, Craig Gibson's preliminary hearing testimony, and a hand-drawn map of the murder scene. N.T., 3/8/12, at 115-16. The trial court granted the jury's request for the map and Gibson's preliminary hearing testimony, but denied the request for Roberts' statement. The trial court explained:

> Yes, okay. I'm going to give you [the map of the scene]. With respect to Craig Gibson, I can give that transcript to you that was read in court and that you followed along. I can give you that.

Darryl Roberts' statement is a different issue altogether. There's material in there that could be prejudicial to either side. What you're going to have to do is basically huddle together and try to reconstruct his testimony. But I can't send that out to you.

*Id.* at 116-17. The jury returned to the deliberation room, and reached a verdict approximately one and a half hours later.

In considering Appellant's claim, the PCRA court found that although Appellant's claim had arguable merit, he failed to demonstrate prejudice. PCRA Ct. Op., 6/13/17, at 14. The PCRA court further explained:

This conclusion must be drawn when the claim is considered in light of the record as a whole. The jury retired to deliberate at approximately 1:00 p.m. At 2:30 p.m. it requested the transcript, a hand-drawn map, and the statement of Darryl Roberts. The request for the map was granted. The request for Roberts' written statement was denied. The jury received the two items and resumed its deliberations, returning with its verdict at 4:05 p.m.

Craig Gibson was killed before trial. At trial the jury heard his recorded testimony from the preliminary hearing. The jury listened to Gibson's tape-recorded testimony and each juror was simultaneously provided with a written transcript of that testimony. Therefore, the jury viewed and considered the written transcript in court, minimizing any prejudice that could result from a second viewing during deliberations. Mr. Gibson testified that he saw both [Appellant] and Mr. Is[h]mail as the victim arrived outside the [b]ar in a rented motor vehicle. He saw Ishmail punch the victim and saw Ishmail and [Appellant] chase the victim around the corner. He saw [Appellant] raise a gun, he heard gunshots and saw [Appellant] fire a gun.

Jimmy Crawford also testified. He lives on Patterson Street, around the corner from 5th Street Bar. He saw his friend, the victim starting to jog up Patterson Street and then saw a "guy" shoot him three or four times.

Darrell Roberts gave a statement to Detective Nutall of the City of Chester Police Department, on May 22, 2007, following the murder. At trial Roberts denied any knowledge of either defendant and claimed that he had no recollection of the statement. He

- 18 -

acknowledged however, that the identifying information it contained matched his and that the signature it bore was his own. In that statement he reported that he saw [Appellant] on the street by the [b]ar. He saw the Victim run from the bar. He saw [Appellant] walk toward the victim and then heard about fifteen shots fired. He identified both [Appellant] and Ishmail in photo arrays.

Steven Cooper was a cellmate of [Appellant's] for six days in the George Hill Correctional Facility. He testified that [Appellant] told him that he had shot and killed the victim ("Falif") in front of a bar after the victim pulled up because the victim owed someone money. Cooper reported this conversation to authorities in October of 2011 when he was released from jail.

Michael Lane, [Appellant's] cousin, testified that in August of 2007 [Appellant] told him that he killed the victim. [Appellant] and Lane were sitting in a parked car on 5th Street and [Appellant] said that he killed the victim because the victim owed a man money. [Appellant] shot the victim on Patterson Street, around the corner from the 5th Street Bar. Lane reported this conversation to police in 2010.

Given the record, the likelihood of a different outcome had the jury's request for the transcript been denied is not a reasonable probability but is *de minimis*. Had the request been denied the jury would have again read the transcript in open court along with the replay of the audio. The request for the transcript came after the jury deliberated for one and a half hours and a verdict was returned one and a half hours later after they returned to deliberate. Along with the transcript it received a hand drawn map that was used at trial. While the testimony of Gibson was significant it did not stand alone. It was corroborated by Roberts, Cooper, and Lane. The jury was instructed to consider all of the evidence and all of the testimony presented. The request for Roberts' statement and the map evidences the diligence with which the jury followed this instruction as it continued its deliberation. Under these circumstances prejudice has not been demonstrated. Trial counsel's failure to object did not deprive [Appellant] "of a fair trial, a trial whose result is reliable," [**Pierce**, 527 A.2d 973] (a convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable).

***Id.*** at 14-17 (some citations omitted).

We agree with the PCRA court's conclusion in that Appellant failed to demonstrate that he suffered prejudice on account of counsel's failure to object. As the PCRA court noted, although Gibson's testimony was significant, it was corroborated by three other witnesses and "did not stand alone." ***Id.*** at 17. Accordingly, no relief is due.

Lastly, to the extent that Appellant suggests that an evidentiary hearing was required to consider his claims, our review compels the conclusion that Appellant failed to establish genuine issues of fact necessitating an evidentiary hearing. ***See*** Pa.R.Crim.P. 907(1); ***Roney***, 79 A.3d at 604. Thus, we discern no error in the PCRA court's determination to dismiss Appellant's claims without a hearing.

Order affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/18